# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHERRI L. YERK, | ) |
| | ) |
| Plaintiff, | ) 2:07-cv-1601 |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

**I.     Introduction**

Pending now before the court are cross-motions for summary judgment based on the administrative record: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Document No. 8) and PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Document No. 10).

Plaintiff, Sherri L. Yerk, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final determination of the Commissioner of Social Security (Commissioner) which denied her application for disability insurance benefits (DIB) and supplemental security income (SSI).

**II.    Background**

   **A.    Facts**

Plaintiff, Ms. Yerk, was born on July 7, 1964, and is classified as a "younger individual" pursuant to 20 C.F.R. §§ 404.1563, 416.953. (R. 17, 24). She has a ninth grade education, and her relevant work history as a nurse's assistant, cashier, store laborer, and

companion is characterized as a combination of unskilled and semi-skilled, and of light, medium, and heavy exertion levels. (R. 24, 204). Her last day of work was December 11, 2003, and her earnings record reveals that she has acquired sufficient coverage to remain insured through at least December 31, 2008. (R. 23). Plaintiff alleges disability as of December 11, 2003 due to problems with her heart and thyroid, shortness of breath, shaking, constant muscle pains, migraines multiple times per week, and sleep disturbance with consequent fatigue. (R. 56-57).

On February 14, 2005, Plaintiff underwent a thyroid ultrasound at Mercy Jeanette Hospital, which revealed a small hypoechoic nodule on the left side of her thyroid. (R. 123). On May 25, 2005, an endocrinologist, Dr. Stephan Kowalyk, examined Plaintiff in order to evaluate the status of her thyroid. (R. 108). Plaintiff had been referred to Dr. Kowalyk by her primary care physician, Dr. Joseph Mollura. *Id*. Dr. Kowalyk determined that Plaintiff's complaints were not likely related to her thyroid, but recommended followup in light of her minimally suppressed TSH level and the small thyroid nodule. (R. 109). Another ultrasound of Plaintiff's thyroid was conducted on Nov. 18, 2005, which again showed the small hypoechoic nodule on the left side of her thyroid. (R. 113). On December 7, 2005, Plaintiff returned to Dr. Kowalyk for a follow-up evaluation and he assured Plaintiff that her symptoms of generalized muscle aches, headaches, and sleep disturbance were not related to her thyroid, but also noted that her thyroid condition would require long-term followup in case her condition progressed to thyrotoxicosis. (R. 130).

An echocardiogram performed at Mercy Jeanette Hospital on October 7, 2005 showed left ventricular dysfunction with an ejection fraction of about 50%, as well as trace

mitral and mild tricuspid regurgitation. (R. 117). A myocardial perfusion stress test conducted at Mercy Jeanette Hospital on Oct. 26, 2005 showed exercise-induced ischemic EKG changes without angina or arrhythmia; fair exercise tolerance; and normal blood pressure response. (R. 115). Further analysis of the stress test results determined that there was no reversible ischemia and that left ventricular function was normal. (R. 116).

On February 3, 2006, a state agency physician, Dr. Nghia Tran, completed a physical residual functional capacity ("RFC") assessment, concluding that Plaintiff was capable of working at a medium exertion level, subject to the restriction that she must avoid even moderate exposure to extreme cold. (R. 135-141). This assessment was based on a review of records from Mercy Jeanette Hospital including the echocardiogram, the myocardial perfusion stress test, and the thyroid ultrasounds, as well as Dr. Kowalyk's reports. (R. 19-20, 140). Dr. Tran did not personally examine Plaintiff, and appears to have neither considered nor requested any records from Dr. Mollura.

An MRI of Plaintiff's brain was conducted at Jeanette OpenMRI on Jan. 20, 2005, the results of which were "unremarkable." (R. 134). On July 26, 2005, Plaintiff's lumbosacral spine was examined by x-ray at Mercy Jeanette Hospital and by MRI at Jeanette OpenMRI; the results of both examinations were normal. (R. 126, 133). An additional MRI of Plaintiff's lumbosacral spine, conducted at Jeanette OpenMRI on Dec. 15, 2005, reflected two possible very mild disc bulges. (R. 132).

On March 14, 2006, Plaintiff visited a neurologist, Dr. Louis W. Catalano, as referred by Dr. Mollura. (R. 142). Dr. Catalano reviewed Plaintiff's complaints, medications, the MRI of Plaintiff's brain, and the first MRI of her spine. (R. 143). His impression at the

time of this initial visit was that Plaintiff suffered from leg and arm pain and paresthesia, restless leg syndrome, chronic pain syndrome / fibromyalgia, benign essential tremor, and sleep and mood disorder. (R. 144). He recommended blood work, electromyography and nerve conduction studies, and modification of Plaintiff's medications, including an increased dosage of "Requip" to address her restless leg syndrome. *Id*. He also stated that Plaintiff "[m]ay return to work." *Id*.

Nerve conduction and electromyography tests were performed on May 15 and 22, 2006 with normal results. (R. 150-53). On June 20, 2006, Plaintiff returned to Dr. Catalano's office for a followup. (R. 149). He noted that Requip had "helped tremendously" with Plaintiff's restless leg syndrome. *Id*. However, Plaintiff was still reporting, *inter alia,* shortness of breath, three to four severe headaches per week, stiffness, back pain, and fatigue. *Id.* Dr. Catalano found that Plaintiff's mental status, strength, sensations, and gait were all normal, and that her cranial nerves were intact; however, he also found that she had a flattened affect with a component of anxiety, and that she exhibited diffuse myofacial pain with multiple tender trigger points upon palpation. *Id*. He diagnosed her as suffering from leg and arm pain with paresthesias, restless leg syndrome, chronic pain syndrome / fibromyalgia, benign essential tremor, and sleep and mood disorder. *Id*. He recommended nerve block injections, as well as further alteration of her medications. *Id*.

The nerve block injections were administered at Dr. Catalano's office on June 23, 2006 by a physician's assistant, David M. Reglla, P.A.-C. (R. 148). Plaintiff returned for a followup with Dr. Catalano on August 15, 2006. (R. 147). Plaintiff reported that she was still in pain, was suffering 7-8 fairly severe headaches each month, and was fatigued all the time;

that the nerve block injections provided some pain relief, but that it was short-lived; that Requip helped with her restless leg syndrome, but that she still occasionally got "jerky" at night; that one of her pain medications was simply ineffective, and that another medication helped with her pain but also made her tired. *Id.* Dr. Catalano found that Plaintiff's cranial nerves, muscle strength and tone, sensory exam, reflexes, and gait were all normal, but again noted that she exhibited diffuse myofacial pain with multiple tender trigger points, as well as mild finger-nose tremor. His diagnosis was the same as it had been on June 20, with an additional tentative diagnosis of irritable bowel syndrome. His treatment recommendations included a new medication for Plaintiff's headaches, and continued nerve block injections.

Although no medical records or reports from Dr. Mollura appear in the administrative record, he is recognized as Plaintiff's primary care physician, *See, e.g.* R. 182; Pl. Br. at 7; Def. Br. at 4, and his continual involvement in Plaintiff's treatment is evident throughout the record. The dates of several of Plaintiff's appointments with him appear on administrative forms. *See* R. 59, 90. He has prescribed or recommended numerous medications to treat Plaintiff's symptoms. R. 61, 91. Much of the medical testing performed on Plaintiff was conducted at his referral. R. 59-61. Each of Dr. Kowalyk's reports were directed to his attention. R. 108, 130. The reports from Dr. Catalano on March 16, June 20, and August 15, 2006 are all directed to Dr. Mollura, and the record from the nerve block injections on June 23 lists him as Plaintiff's "Family Physician." R. 142, 147-49. The notices of disapproved claims that were sent to Plaintiff on February 8, 2006 each list a report from Dr. Mollura, received by the Social Security Administration (SSA) on 12/15/05, as one of the six documents considered in the initial denial of benefits. R. 35, 159. The report referred to in these notices

5

does not itself appear in the administrative record.

On the request-for-hearing form, Plaintiff states that her reason for seeking the administrative hearing is that "I have been told by my doctor that I should not work because of my fibromyalgia…." R. at 33. A memo from Plaintiff's attorney, apparently offered and received into the record at the hearing, states in bold text that "Dr. Mollura...assessed the claimant as being disabled…beginning in January of 2005 (Dr. Mollura 12/05/05)." R. at 92.

At the October 24, 2006 hearing before the ALJ, Plaintiff testified regarding the alleged impairment caused by her pain. Her claims included the following: that she is able to do only one load of laundry per day, and relies on her teenage daughter to actually carry the laundry up and down stairs; that she has trouble cooking due to difficulty standing in the kitchen long enough; that she is unable to do dishes because the pain in her arms, legs, and back become too severe; that she cannot dust a single room all at once because it triggers pain in her arms, causes her hands and fingers to start tingling, and causes her to lose grip in her hands; that she requires the assistance of her 16 yr. old daughter to grocery shop; that she is unable to carry anything weighing over ten pounds more than a short distance, because doing so causes her arms to begin shaking severely; that the shaking impairs fine motor skills to the extent that she becomes unable to, *e.g.*, write her name; that she must alternate sitting and standing when engaged in personal care activities like showering, drying her hair, dressing; that pain from keeping her arms raised makes it difficult for her to brush her hair, or put on small amounts make-up or jewelry; that she is capable of occasionally mopping her kitchen, but that the standing and arm strain cause pain; that she is unable to vacuum, because the pain in her arms from pushing and pulling becomes too intense; that kneeling, crouching, stooping, and crawling

6

quickly become very painful, and that she needs to support herself on something to get back up; that sitting for more than 30 minutes at a time becomes too painful, requiring her to get up and move about for at least 20 minutes[1]; that lying prone becomes painful, causing her to get out of bed every hour or two at night, and stay up for as much as 30 or 40 minutes each time; and that this frequent interruption prevents her from getting recuperative sleep. R. 188-194. She further testified that she suffers migraine headaches two to four days per week, lasting two to four days each, and that when they occur she is "down," needing to shut out light and noise because they "barrel[] through [her]." R. 195 She stated that her prescribed pain medications "don't help with the pain....they just take the edge off the intensity." R. 194.

### B. Procedural History

Plaintiff protectively filed applications for DIB and SSI on October 13, 2005, in which she alleges disability since December 11, 2003. Her claims were denied on February 8, 2006. At Plaintiff's request, a hearing was held before an administrative law judge (ALJ) on October 24, 2006. Plaintiff testified at the hearing and was represented by counsel. Mitchell Schmidt, a vocational expert, also testified at the hearing.

On December 21, 2006, the ALJ rendered a decision denying Plaintiff's claim for benefits. (R. 25). Plaintiff's heart condition, thyroid condition, and restless leg syndrome were found to be non-severe impairments. (R. 19, 23). Plaintiff's chronic pain syndrome / fibromyalgia / myofacial pain syndrome, headaches, and mood disorder were found to be severe impairments, but not sufficient to meet or equal any listing-level impairment. *Id*. The ALJ's

---

[1] Similarly, Plaintiff testified that she is able to drive or ride in a car for no more than 30 minutes, after which point the pain from sitting in one place too long becomes too intense. R. 197.

discussion of Plaintiff's subjective complaints of pain consisted of the following: an assertion that Plaintiff's complaints were evaluated in accordance with the requirements of Social Security Ruling 96-7p and 20 CFR §§ 404.1529 & 416.929; a list of the factors identified in those regulations for evaluating claimant's subjective symptoms; and the conclusion that "[w]hen so evaluated, Claimant's subjective complaints are found to be exaggerated and inconsistent with the totality of the evidence, including with the clinical and objective findings of record." R. 20-21. The ALJ determined that Plaintiff is unable to return to her past employment, but that she retained the residual functional capacity to perform light work, with some modifications. R. 22. In response to a hypothetical based on this RFC and Plaintiff's age, education, and work experience, the vocational expert identified several light-work and sedentary jobs that such an individual could perform, which exist in significant numbers both locally and in the national economy. *Id*. Plaintiff's counsel posed additional hypotheticals, one of which incorporated Plaintiff's claim that her headaches would cause her to be absent from work two-to-three days per week. The VE responded that an individual suffering two to three absences per week due to migraines would be unable to sustain employment. (R. 210). The ALJ rejected this latter hypothetical, stating that "[a] review of the record does not indicate that Claimant was limited as outlined in such questions." (R. 23). In light of the VE's testimony, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of the decision, and was therefore ineligible for benefits. (R. 23). The ALJ's decision became the final decision of the Commissioner on October 26, 2007, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ. (R. 5-8). This litigation followed.

## III. Legal Analysis

### A. Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g), 1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It consists of more than a scintilla of evidence, but less than a preponderance. *Stunkard v. Secretary of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520; *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118-19 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186, F.3d 422, 428 (3d Cir. 1999)).

To qualify for disability benefits under the Act, a claimant must demonstrate that

there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

> (1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777; or,

> (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

**B.     Discussion**

Plaintiff complains of a wide array of symptoms, but the crux of her claim for benefits is the allegedly disabling severity of the pain caused by her fibromyalgia and headaches. *See* R. 181-82. The Third Circuit's standard for evaluating subjective pain requires:

> (1) that subjective complaints of pain be seriously considered, even where not fully confirmed by objective medical evidence; (2) that subjective pain "may support a claim for disability benefits," *Bittel*, 441 F.2d at 1195, and "may be disabling"; (3) that where such complaints are supported by medical evidence, they should be given great weight; and (4) that where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence.

*Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984) (citations omitted). The ALJ in this case found that Plaintiff's fibromyalgia and headaches are medically determinable conditions that could reasonably produce the pain that she alleges. R. 18. Thus, the credibility of Plaintiff's subjective complaints of pain is likely to be determinative of her eligibility for benefits. *See Green*, 749 F.2d 1069-70. Plaintiff's first contention is that the ALJ erred in finding that those subjective complaints were not fully credible.

Plaintiff argues that the ALJ's assessment of her credibility was improper in several respects, and that the Court should therefore remand for reconsideration by the ALJ. Specifically, Plaintiff contends that (1) the ALJ failed to sufficiently articulate the rationale for finding that Plaintiff's complaints were not fully credible, and (2) the absence from the record of reports from Plaintiff's primary care doctor, Dr. Mollura, precludes this Court from finding that the ALJ's decision is supported by substantial evidence.

The Commissioner argues in response that, given the highly subjective nature of fibromyalgia, the ALJ's credibility finding is due a heightened level of deference; and that Plaintiff's claims of disabling limitations are "inconsistent with the mild objective and clinical findings of record," noting in particular the absence of a treating physician opinion that Plaintiff was incapable of working, and the comment by Dr. Catalano that Plaintiff "may return to work." Def. Br. 10; *see* R. 144.

11

The Court agrees with Plaintiff, for the reasons explained below. Because remand is warranted on these grounds, the Court does not reach Plaintiff's contentions regarding the findings of the ALJ at steps two, three, and five of the disability evaluation.

*1. The ALJ did not sufficiently explain the adverse credibility finding.*

The ALJ is required to articulate the reasons for finding that a claimant's subjective complaints of pain are not fully credible. *Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 433 (3d Cir 1999). These reasons must be grounded in the evidence, *Id.* (citing S.S.R. 96-7p), and must be sufficiently specific to indicate which evidence has been rejected and which has been relied upon as the basis for the finding. *Id.* (citing *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981)). It is not enough that the record contain sufficient evidence to support the ALJ's conclusion under some hypothetical rationale; the ALJ must "build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *see also Fargnoli v. Massanari,* 247 F.3d 34, 44 n.7 (3d Cir. 2001)("the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."). In this case, the ALJ's discussion of Plaintiff's credibility consisted of the following:

> The undersigned evaluated Claimant's subjective complaints in accordance with Social Security Regulations 20 CFR 404.1529, 416.929 and Social Security Ruling 96-7p which set forth there are situations in which an individual's alleged or reported symptoms suggest possible greater restriction of an individual's ability to function than is demonstrated by objective medical evidence alone. In assessing Claimant's residual functional capacity, subjective allegations must be considered. In evaluating subjective complaints, the undersigned must carefully consider all avenues presented relating to such matters as:

1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
2. Precipitating and aggravating factors (e.g. movement, activity, environmental conditions);
3. Type, dosage, effectiveness, and adverse side effects of any pain medication;
4. Treatment other than medication, for relief of pain;
5. Functional restrictions; and
6. Claimant's daily activities.

(20 CFR 404.1529, 416.929). When so evaluated, Claimant's subjective complaints are found to be exaggerated and inconsistent with the totality of the evidence, including with the clinical and objective findings of record.

R. 20-21. This is precisely the sort of superficial analysis that Social Security Ruling 96-7p identifies as inadequate:

It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility...and must be sufficiently specific to make clear....the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p. Because the ALJ gives no indication which of Plaintiff's subjective complaints are "inconsistent with the totality of the evidence," how they are found to be inconsistent, or with which specific evidence they are inconsistent, it is impossible for this Court to determine whether the ALJ's adverse credibility finding is supported by substantial evidence.[2] Accordingly, the case must be remanded to the ALJ for a clearer articulation of the rationale for the credibility assessment.

---

The sections of the ALJ's decision immediately before and after the credibility assessment summarize the reports from Dr. Catalano, R. 20, as well as Plaintiff's claimed limitations, reported symptoms, and testimony as to daily activities. R.21. Unfortunately, in neither section does the ALJ discuss the relevance of these facts, so it is unclear whether or to what extent the ALJ may have considered them to be probative of Plaintiff's credibility.

13

While the Commissioner is correct that heightened deference to the ALJ's credibility assessment is warranted in fibromyalgia cases due to the highly subjective nature of the condition's symptoms, *see e.g. Hirshfield v. Apfel,* 159 F.Supp.2d 802, 812 (E.D. Pa. 2001), even a heightened degree of deference does not absolve this Court of its responsibility to review the ALJ's decision. As noted above, the ALJ's failure to articulate the rationale for the credibility finding has rendered review of that finding impossible; the question of the appropriate level of deference is therefore not controlling.

The Commissioner also argues that there is substantial evidence to support the ALJ's adverse credibility determination because Plaintiff's subjective complaints were "inconsistent with the mild objective and clinical findings of record." In particular, the Commissioner points to the absence of a treating physician's opinion stating that Plaintiff was incapable of working, as well as the comment by Dr. Catalano that Plaintiff "may return to work," as support for the finding that Plaintiff's complaints were not credible. This argument is unavailing, because it is not clear from the decision whether the ALJ considered these facts to be probative of Plaintiff's credibility, or the weight, if any, which they were given.[3] This Court's role is to determine whether there is substantial evidence in the record to support the ALJ's stated rationale, not to explore whether the record could support some hypothetical rationale which the Commissioner or the Court itself later supplies. *See Sarchet v. Chater,* 78 F.3d at 307; *Fargnoli v. Massanari,* 247 F.3d at 44 n.7.

For the above reasons, it is necessary to remand to the ALJ for a more clearly articulated

---

The "may return to work" comment is simply recited without analysis amid a summary of all of Dr. Catalano's findings. The ALJ's comment on page 5 of the decision, R. 19, concerns a lack of statements that Plaintiff's impairments meet or equal any listing impairment, not whether plaintiff's impairments are at all disabling. The credibility assessment makes no reference to either of these points.

evaluation of Plaintiff's credibility.

        *2. The ALJ did not sufficiently develop the record regarding the records of Dr. Mollura*

        Administrative law judges have a duty to develop a full and fair record in social security cases. *Boone v. Barnhart*, 353 F.3d 203, 208 n.11 (3d Cir. 2004). This duty exists whether or not the claimant is represented by counsel. *Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005). The ALJ's investigative role does not relieve claimant of the burden of proof, *Hess v. Secretary of Health, Education, and Welfare*, 497 F.2d 837, 840 (3d Cir. 1974), but it nonetheless influences the nature of that burden. *Dobrowolsky v. Califano*, 606 F.2d 403, (3d Cir. 1979) ("we see no point in deciding abstractly whether the 'burden of proof' at a (disability) proceeding is on the claimant or Secretary. Both have responsibilities.") (internal citation omitted). Thus, "an ALJ must secure relevant information regarding a claimant's entitlement to social security benefits", *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). While the ALJ need not seek out every piece of evidence that might be available, *Hess*, 497 F.2d at 840, when the medical documentation in the record is lacking or unclear, "it is incumbent on the [ALJ] to secure any additional evidence needed to make a sound determination." *Ferguson v. Schweiker*, 765 F.2d 31, 36 (3d Cir. 1985). Ultimately, the question is whether the administrative record has been adequately developed under the circumstances to provide a substantial basis for the decision. *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003).

        As a preliminary matter, the Court notes that remand under this line of cases is distinct from and not inconsistent with the "new evidence" standard identified in *Matthews v. Apfel,* 239 F.3d 589 (3d Cir. 2001). The *Matthews* rule concerns ALJ decisions that are initially valid,

15

but which become unsupported in light of evidence that was never presented to the ALJ. 326 F.3d at 593 ("The correctness of that decision depends on the evidence that was before him. He cannot be faulted for having failed to weigh evidence never presented to him."). This is the Sentence Six remand identified in *Matthews*. *Id. at 593.* Conversely, remand due to inadequate development of the record concerns insufficiency of the record as it existed at the time of the ALJ's decision, s*ee e.g. Reefer v. Barnhart,* 326 F.3d at 380, and is thus a form of Sentence Four remand. *See Matthews,* 326 F.3d at 593. Accordingly, the "new evidence" rule is not implicated, even where a plaintiff proffers new evidence, so long as that evidence is not used to determine whether the ALJ's decision was supported by substantial evidence. *See Reefer,* 326 F.3d at 379 n.2, 381. The proffered exhibits in the instant case concern reports that appear to have already been submitted to and relied upon by the Social Security Administration at an earlier stage of Plaintiff's application for benefits, so it is not clear whether they should really be treated as "new evidence" subject to the *Matthews* standard. *See Matthews*, 239 F.3d at 595 (noting that the "new evidence" rule is designed to eliminate the temptation for plaintiffs to withhold evidence in order to preserve a reason for later remand). Regardless, because this Court's decision is based upon the state of the record as it appeared before the ALJ, and not upon the proffered exhibits, it is not necessary to determine whether they would satisfy the "new evidence" test.

    As noted above, Dr. Joseph Mollura is Plaintiff's primary care physician. The record reflects Dr. Mollura's continuous involvement in the efforts to diagnose and treat Plaintiff's ailments: Plaintiff has been visiting him since at least Jan. 1, 2003, and continued to see him through at least March 31, 2006; he prescribed or recommended most of Plaintiff's medications;

Plaintiff has undergone many medical tests at his direction; and virtually every medical report in the record is directed to his attention. Moreover, a report from Dr. Mollura appears to have been one of six documents reviewed by the SSA in its initial denial of Plaintiff's claim for benefits, and both Plaintiff's request-for-hearing form and the memo from her attorney summarizing her case for the hearing refer to Dr. Mollura's opinion that Plaintiff's pain was disabling. Strangely, no reports or medical records from Dr. Mollura appear anywhere in the record before the ALJ. The decision contains no explanation for the absence of the report previously considered by the SSA. There is no apparent acknowledgement of or inquiry into the references to Dr. Mollura's assessment of the extent of Plaintiff's pain. Indeed, there is no indication that the ALJ took any steps at all to investigate this gap in the record; the record reflects no effort to request these or any other medical reports or records from Dr. Mollura, nor any prompting to Plaintiff or her counsel to acquire and submit them.[4]

       This is particularly troubling in view of the paucity of evidence in the record that is actually probative of the credibility of Plaintiff's subjective complaints of pain. Contrary to the Commissioner's assertions, the "substantially normal findings" resulting from objective testing are in no way inconsistent with Plaintiff's diagnosed fibromyalgia and headaches. *See Sarchet v. Chater*, 78 F.3d at 307 ("the absence of objectively discernible symptoms....is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced."). Plaintiff's testimony regarding her daily living reflects substantial physical limitations and a frequent need for assistance; clearly,

---

The precise boundaries of the ALJ's duty to develop the record are not clear; however, the Court notes that in Fishburn v. Sullivan, 802 F.Supp. 1018 (S.D.N.Y. 1992), remand was granted when the ALJ failed to independently request records directly from a treating physician, after Plaintiff's attorney had been expressly directed to obtain and submit those records but had failed to do so.

this testimony is not inconsistent with her subjective complaints of disabling pain. The only evidence in the record that appears to contradict Plaintiff's claims is the comment from Dr. Catalano that Plaintiff "May return to work." R. 144. This Court does not determine here whether this comment could, ordinarily, constitute substantial evidence in support of an adverse credibility finding; rather, the Court finds that in light of Dr. Mollura's long involvement as Plaintiff's treating physician and the inclusion of one of his reports in the earlier denial of Plaintiff's claim for benefits, no sound determination can be reached without first attempting to obtain records from Dr. Mollura regarding the extent of Plaintiff's impairment.

Because the ALJ failed to adequately develop the administrative record regarding Dr. Mollura's records which may reflect the severity of Plaintiff's symptoms and the consequent degree of her impairment, it cannot be said that the decision was supported by substantial evidence. Accordingly, remand is required so that the record may be further developed on this issue.

## IV.    Conclusion

In light of the subjective nature of Plaintiff's diagnosed conditions, her eligibility for benefits is heavily dependent on the ALJ's determination of her credibility. The ALJ failed to sufficiently articulate the reasons for concluding that Plaintiff's subjective complaints were not fully credible, thus depriving Plaintiff of meaningful review of that finding. Further, the ALJ failed to sufficiently develop the record regarding Dr. Mollura's records with respect to the degree of Plaintiff's impairment.

For these reasons, Plaintiff's Motion for Summary Judgment will be granted in part and denied in part; the Commissioner's Motion for Summary Judgment will be denied; and the

matter will be remanded for further consideration by the ALJ.

An appropriate Order follows.


McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHERRI L. YERK, | ) |
| | ) |
| Plaintiff, | )  2:07-cv-1601 |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## ORDER OF COURT

**AND NOW**, this 26th day of January, 2009, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

1. Plaintiff's MOTION FOR SUMMARY JUDGMENT (Document No. 8) is **Granted in Part and Denied in Part.**

2. Defentant's MOTION FOR SUMMARY JUDGMENT (Document No. 10) is **Denied**.

This matter is remanded to the Commissioner for further proceedings in accordance with the foregoing Opinion.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: E. David Harr, Esq.
Lee Karl, AUSA